UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
MARQUAILLAS GRAY,

                    Plaintiff,          **MEMORANDUM AND ORDER**
                                        09-CV-4520(KAM)(LB)

     -against-


METROPOLITAN DETENTION CENTER,
MARQUEA RICE, and LESLEY FOREMAN,

                    Defendants.
----------------------------------X

**MATSUMOTO, United States District Judge:**

On September 16, 2009, Marquaillas Gray ("plaintiff")

commenced this *pro se* action pursuant to 42 U.S.C. Section 1983,

alleging violations of his constitutional rights by the Federal

Bureau of Prisons' ("BOP") Metropolitan Detention Center

("MDC"), Marquea Rice, Senior Officer Specialist at the MDC

("Rice"), and Lesley Foreman, Senior Officer Specialist at the

MDC ("Foreman") (collectively, "defendants"). The court

construes plaintiff's claims principally under *Bivens v. Six*

*Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971) ("*Bivens*").[1] Construed broadly, the Complaint alleges

that defendants served plaintiff food containing glass

fragments, causing him to sustain lacerations to his gums and

---

[1] *See Wheeldin v. Wheeler*, 373 U.S. 647, 650 n.2 (1963) (noting that
federal officers are not liable under 42 U.S.C. § 1983); *Daloia v. Rose*, 849
F.2d 74, 75 (2d Cir.) (per curiam) (construing *pro se* plaintiff's Section
1983 claims against federal defendants as *Bivens* claims); *Cohen v. Holder*,
No. 11-cv-0003, 2011 U.S. Dist. LEXIS 20989, at *1 (E.D.N.Y. Mar. 1, 2011)
(same).

mouth, and that defendants subsequently delayed treatment of plaintiff's injuries, resulting in prolonged pain and anguish and the loss of a tooth.

Pending before the court is defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* ECF No. 22, Notice of Motion, dated July 28, 2010 ("Notice of Mot.").) For the reasons set forth below, defendants' motion to dismiss and, in the alternative, for summary judgment is granted.

## BACKGROUND

## I. Procedural History and Complaint Allegations

Plaintiff, a former inmate at the MDC, commenced this action *pro se* on September 16, 2009, against defendants MDC, Rice, and Foreman. (*See* ECF No. 1, Complaint ("Compl.") at 1; Defendants' Statement Pursuant to Local Civil Rule 56.1 ("Defs.' R. 56.1 Stmt.") ¶ 1.) Liberally construed, the Complaint asserts claims against defendants for cruel and unusual punishment in violation of the Eighth Amendment, and for negligence. Specifically, plaintiff alleges that on July 6, 2009, while plaintiff was in solitary confinement in the MDC, defendants Rice and Foreman (the "Individual Defendants") served plaintiff food that contained fragments of glass. (Compl. app.

A.) Plaintiff suggests that the food was intentionally contaminated as "retaliation" against plaintiff's cellmate, who had filed complaints against a "couple of officers [who] work with Officer Foreman" at the MDC. (Compl. apps. A, B.) As a result of eating glass fragments, plaintiff claims to have suffered bleeding, sharp pains, lacerations to his gums and mouth, and a broken tooth. (*Id.*)

Plaintiff further asserts that he reported his injury the same day to the Individual Defendants. (*Id.* app. A) Plaintiff alleges that he was taken to see a doctor, who promised plaintiff an x-ray to ensure that he was not bleeding internally. (*Id.*) Plaintiff claims, however, that he did not receive an x-ray at the MDC. (*Id.*) As a result of this delay in medical treatment, plaintiff claims to have suffered pain and anguish and lost a tooth. (*Id.* app. B.) He seeks money damages in the amount of $70,000. (*Id.*) Plaintiff asserts that he "ha[s] copies of all [his] unheard request[s] that were submitted" (*id.* app. A), but he has not submitted to the court copies of any administrative requests.

On October 28, 2009, the court granted plaintiff's motion to proceed *in forma pauperis*. (ECF No. 4, Order dated Oct. 28, 2009.) On January 25, 2010, the court denied defendants' request for a pre-motion conference, directed defendants to advise plaintiff of the steps necessary to oppose

a motion to dismiss, and directed defendants to submit a
proposed briefing schedule for their anticipated motion to
dismiss and, in the alternative, for summary judgment. (*See*
Order Denying Request for Pre-Motion Conference, dated Jan. 25,
2010.)  Defendants sent a letter to plaintiff on February 8,
2010 seeking his consent to a proposed briefing schedule and
notifying him of the steps necessary to oppose their anticipated
motion.  (*See* ECF No. 11-1, Letter from Orelia E. Merchant to
Marquaillas Gray, dated Feb. 8, 2010.)  On April 9, 2010,
defendants filed their proposed briefing schedule with the
court.  (*See* ECF No. 11, Letter from Orelia E. Merchant to the
Honorable Kiyo Matsumoto, dated Apr. 9, 2010.)  In a letter to
the court dated April 15, 2010, plaintiff acknowledged that he
"need[ed] to generate a response before the end of April 2010"
and requested that the court appoint counsel to represent him.
(ECF No. 12, Letter from Marquaillas Gray to the Honorable Lois
Bloom, dated Apr. 15, 2010.)

On May 19, 2010, Magistrate Judge Bloom held an
initial telephone conference with the parties.  (*See* ECF No. 18,
Transcript of Telephone Conference, dated May 19, 2010 ("May 19
Tr.").)  During the course of the call, plaintiff stated that he
had "filed [a] BP-8 at M.D.C." but that he did not have a copy
of the form because he was transferred to another facility
shortly after he filed it and he was not permitted to take any

documents with him to the new facility. (*Id.* at 16.) Plaintiff further stated that on July 6, 2009, the night he was allegedly injured, he saw a doctor who examined his mouth and scheduled him for an x-ray. (*Id.* at 19.) Additionally, plaintiff noted that he could not say whether or not defendants Rice and Foreman had put the glass in his meal; he only knew that they "were the two Officers that gave [him] the glass." (*Id.* at 24.) On June 22, 2010, Magistrate Judge Bloom held a second telephone conference with the parties. (*See* ECF No. 16, Minute Entry for Telephone Conference, dated June 22, 2010.) On June 24, 2010, Judge Bloom denied without prejudice plaintiff's request to appoint counsel and established a briefing schedule for defendants' motion. (*See* ECF No. 17, Order Denying Without Prejudice Plaintiff's Letter Motion to Appoint Counsel, dated June 24, 2010.)[2]

Defendants served plaintiff with the instant motion on July 28, 2010 and reminded him that "opposing affidavits and/or answering memorandum of law" were due by August 30, 2010. (*See* ECF No. 21, Letter Transmitting Notice of Motion, Notice to *Pro Se* Litigant Opposing Motion, Declaration of Nicole McFarland, Declaration of Orelia E. Merchant, 56.1 Statement, and

---

[2] In her June 24, 2010 Order, Judge Bloom noted that she had contacted plaintiff's CJA attorney and requested that he provide plaintiff with the administrative request form, SF-95, required to initiate a claim under the Federal Tort Claims Act. (ECF No. 17, Order Denying Without Prejudice Plaintiff's Letter Motion to Appoint Counsel, dated June 24, 2010.)

Defendants' Memorandum in Support, dated July 28, 2010 ("Letter Transmitting Notice").)  Despite having received adequate notice of the briefing schedule and a copy of the Notice to *Pro Se* Litigant Opposing a Rule 12 Motion Supported by Matters Outside the Pleadings and Motion For Summary Judgment, plaintiff did not oppose defendants' motion.[3]  (*See* Letter Transmitting Notice; ECF No. 23, Notice to *Pro Se* Litigant Opposing a Rule 12 Motion Supported by Matters Outside the Pleadings and Motion For Summary Judgment, dated July 28, 2010.)  On September 13, 2010, defendants filed their unopposed motion via ECF.  (*See* ECF No. 26, Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Complaint, or In the Alternative, For Summary Judgment ("Defs.' Mem.").)

Defendants move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, arguing that (1) plaintiff's constitutional tort claims against defendant MDC and against defendants Rice and Foreman in their official capacities are barred by sovereign immunity; and (2) to the extent plaintiff's claims are construed as arising under the Federal Tort Claims Act, 28 U.S.C. § 2079 ("FTCA"), such claims must be dismissed because plaintiff failed

---

[3] The court notes that a plaintiff's failure to respond to a motion to dismiss does not automatically warrant dismissal of the complaint, *see, e.g.*, *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000), and will accordingly consider the merits of defendants' motion to dismiss.

to exhaust his administrative remedies.  (*See* Defs.' Mem. at 3-6.)

In the alternative, the Individual Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to claims against them in their individual capacities, arguing that (1) plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a) (the "PLRA"); (2) plaintiff failed to allege facts supporting a claim that the Individual Defendants were personally involved in a violation of his constitutional rights; (3) plaintiff failed to allege facts supporting a claim that the Individual Defendants exercised deliberate indifference to his medical needs; and (4) the Individual Defendants are entitled to qualified immunity because plaintiff failed to allege facts supporting a claim that the Individual Defendants violated his constitutional rights.  (*See* Defs.' Mem. at 6-16.)

## II.  **Undisputed Material Facts**[4]

The following facts are taken from the Complaint, defendants' unopposed statement of material facts pursuant to Local Civil Rule 56.1, and materials in the record.

Plaintiff is an inmate who was housed at the MDC from October 16, 2008 to July 15, 2009.  (Defs.' R. 56.1 Stmt. ¶ 1.) A search of the BOP's computerized database maintained in the ordinary course of business revealed that plaintiff did not file any claims through the BOP's administrative remedy process while he was housed at the MDC between October 16, 2008 and July 15, 2009.  (ECF No. 24, Declaration of Nicole McFarland ("McFarland Decl.") ¶ 14, Ex. A; Defs.' R. 56.1 Stmt. ¶¶ 14-15.)  The BOP has not received an SF-95 form from plaintiff.  (Defs.' R. 56.1 Stmt. ¶ 17.)

---

[4] Local Civil Rule 56.1 ("L. Civ. R.") requires that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." L. Civ. R. 56.1(c).  In addition, Local Civil Rule 56.2 requires that notice be sent to a *pro se* party by the party moving for summary judgment, informing the *pro se* party of the need to submit evidence and follow the procedures in Rule 56 and Local Rule 56.1 to oppose the motion for summary judgment.  *See* L. Civ. R. 56.2.  Here, defendants complied with Rules 56.1 and 56.2 by serving a Rule 56.1 statement and proper notice on plaintiff.  (*See* Letter Transmitting Notice; Notice of Mot.; Defs.' R. 56.1 Stmt.)  Plaintiff did not file an opposition to defendants' motion, submit a correspondingly numbered document responding to defendants' 56.1 statement, or file any affidavits or other documentary evidence to oppose defendants' motion.  Nor did plaintiff attach to his Complaint any supporting evidence to which the court may cite in deciding defendants' motion.  Because plaintiff failed to respond to the motion for summary judgment with affidavits or documentary evidence contradicting the material facts asserted by defendants, the court accepts as true defendants' factual assertions, which are adequately supported by admissible evidence, as permitted by Local Civil Rule 56.2.

Medical records maintained by BOP reveal that on July 10, 2009, four days after the alleged incident, plaintiff saw a doctor at the MDC to complain about chest pain from a bullet lodged in his body. (Defs.' R. 56.1 Stmt. ¶ 19; McFarland Decl. Ex. B at US000002.) The doctor noted in plaintiff's file that "x-rays will be performed." (McFarland Decl. Ex. B at US000003.) During that visit, plaintiff did not complain of any mouth, gum, or tooth pain and he did not mention to the doctor that he had ingested any glass. (Defs.' R. 56.1 Stmt. ¶ 19; McFarland Decl. Ex. B at US000002-05.) Plaintiff's BOP records do not reflect that he ever complained of eating or swallowing glass. (*See generally* McFarland Decl. Ex. B.)

On July 15, 2009, plaintiff was transferred from the MDC to the Queens Private Detention Center ("QPDC"). (Defs.' R. 56.1 Stmt. ¶ 20.) Medical records maintained by the QPDC reveal that during his intake screening at the QPDC on July 15, 2009, plaintiff did not complain to QPDC medical staff of any pain or injuries. (*Id.* ¶ 21; Declaration of Orelia E. Merchant ("Merchant Decl.") Ex. A at QPDC000000111, QPDC000000113.) According to plaintiff's medical records, the first time plaintiff ever complained to a doctor of swallowing any foreign object was on September 25, 2009. On that date, he complained to QPDC staff that he had swallowed a "plastic wrapper 2cm long," "choked," and "couldn't breath[e]." (Merchant Decl. Ex.

A at QPDC000000105-06.)  In a medical request dated September
26, 2009, he complained, "[m]y throat is on fire, it feels
scar[r]ed.  It burns [harshly] everytime I swallow d[ue] to the
incident that occurred yesterday." (*Id.* Ex. A at
QPDC000000079.)  On September 29, 2009, plaintiff again saw QPDC
medical staff and complained that five days earlier he had
"swallowed a piece of [staple] remover that was in [his] food"
and he now saw blood in his stool. (*Id.* Ex. A at
QPDC000000103.)  At a psychological counseling session at QPDC
on October 3, 2009, plaintiff complained that he had "swallowed
a piece of metal/plastic on 9/27/09," he had experienced blood
in his urine and stool since then, and he believed "maybe
someone [was] trying to harm [him]." (*Id.* Ex. A at
QPDC000000042; Defs.' R. 56.1 Stmt. ¶ 22.)

## DISCUSSION

### I.  Legal Standards

#### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

A court may dismiss a claim under Federal Rule of
Civil Procedure 12(b)(1) for lack of subject matter
jurisdiction.  Fed. R. Civ. P. 12(b)(1); *Makarova v. United
States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly
dismissed for lack of subject matter jurisdiction under Rule
12(b)(1) when the district court lacks the statutory or
constitutional power to adjudicate it.").  In reviewing a motion

to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  A plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Makarova*, 201 F.3d at 113.  In deciding a Rule 12(b)(1) motion to dismiss, the court may refer to and rely on evidence outside the pleadings. *J.S.*, 386 F.3d at 110.

**B.    Motion for Summary Judgment Pursuant to Rule 56**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party carries the burden of demonstrating the absence of a genuine issue of material fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities

must be resolved against the moving party.  *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).  Even when a summary judgment motion is unopposed, a court must examine the record to determine whether a genuine issue of fact exists for trial; a motion for summary judgment cannot be granted by default.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

Nevertheless, the nonmoving party cannot rest merely on speculation, conclusory allegations, and denials, but must instead set out specific facts showing a genuine issue for trial.  *Nat'l Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion.").  Nor can the nonmoving party rest only on the pleadings.  *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) ("[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."); *Winkfield v. City of New York*, No. 97-CV-2183, 1999 U.S. Dist LEXIS 19193, at *14 (S.D.N.Y. Dec. 14, 1999) ("[P]laintiff has failed to come forward with any evidence whatsoever and relies on conclusory allegations and his own belief alone.  That's just not enough." (citing *Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d Cir. 1996))); *Davis v. New*

*York*, 316 F.3d 93, 100 (2d Cir. 2002) ("The nonmoving party must
'go beyond the pleadings, and by [his or] her own affidavits, or
by the depositions, answers to interrogatories, and admissions
on file, designate specific facts showing that there is a
genuine issue for trial.'" (quoting *Celotex*, 477 U.S. at 324)).
Instead, each statement of material fact by the movant or
opponent must be followed by citation to evidence that would be
admissible, as required by Rule 56(c) and Local Civil Rule
56.1(d).

    Moreover, even if plaintiff had responded to the
defendants' motion, "the mere existence of *some* alleged factual
dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement
is that there be no *genuine* issue of *material* fact." *Anderson*,
477 U.S. at 247-48 (emphasis in original). No genuine issue of
material fact exists "unless there is sufficient evidence
favoring the nonmoving party for a jury to return a verdict for
that party. If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted." *Id*.
at 249-50 (internal citations omitted).

### C.    Motion to Dismiss Pursuant to Rule 12(b)(6)

    Although defendants do not explicitly move to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(6), they do
argue with respect to plaintiff's *Bivens* claims against the

Individual Defendants that such claims were not sufficiently stated. (Defs.' Mem. at 11-15.) Accordingly, the court looks at defendants' motion under both Rule 56 and Rule 12(b)(6). To the extent that a defendant's motion for summary judgment under Rule 56 is based entirely on the plaintiff's complaint, a court may treat the motion as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Wade v. Tiffin Motorhomes, Inc.*, 686 F. Supp. 2d 174, 181 (N.D.N.Y. 2009). As a result, even where a defendant has not expressly moved to dismiss pursuant to Rule 12(b)(6), "a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) (citations omitted); *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a *Rule 56* summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing plausibility on a Rule 12(b)(6) motion to dismiss, a court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Id.* at 1950, and afford the plaintiff every reasonable inference, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth."  *Iqbal*, 129 S. Ct. at 1949-50 (internal quotation marks and citations omitted).

The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949.  This does not require a showing of a "probability" of misconduct, but it does demand more than "a sheer possibility that a defendant has acted unlawfully."  *See id.*  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is appropriate.  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 570 (noting that where "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed"). Indeed, "however true," if the allegations in a complaint "could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks and citations omitted).

"Material *de hors* the complaint are generally not considered on a motion to dismiss unless the court treats it as one for summary judgment, giving all the parties a reasonable opportunity to present relevant evidence under Rule 56." *Nicholls v. Brookdale Univ. Hosp. Med. Ctr.*, No. 03-CV-6233, 2004 U.S. Dist. LEXIS 12816, at *5-6 (E.D.N.Y. July 9, 2004) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Here, defendants, on notice to the plaintiff, moved in the alternative for summary judgment pursuant to Rule 56 and submitted materials outside of the pleadings in support of summary judgment. (*See* Notice of Mot.) Therefore, where defendants rely on materials outside plaintiff's Complaint, the court will consider the motion as one for summary judgment, rather than as a 12(b)(6) motion, and evaluate the motion under the Rule 56 standard. Alternatively, where defendants rely solely on materials found within the four corners of the Complaint, the court will consider the motion as a 12(b)(6)

motion, and subject the motion to the facial plausibility standard described above.

### D. *Pro Se* Submissions

The Supreme Court has stated that "[a] document filed *pro se* is 'to be liberally construed,' and . . . must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)). Because plaintiff in this case is *pro se*, the court will construe his submissions liberally "to raise the strongest arguments they suggest." *Bertin*, 478 F.3d at 491.

## II. <u>Analysis</u>

### A. Plaintiff's Claims Against the MDC and the Individual Defendants In Their Official Capacities

Plaintiff's Complaint can be read to assert claims against the MDC and against Rice and Foreman in their official and individual capacities, pursuant to *Bivens*. For the reasons discussed below, the *Bivens* claims against the MDC and the Individual Defendants in their official capacities must be dismissed on sovereign immunity grounds.

17

It is firmly established that "the United States, as sovereign, is immune from suit save as it consents to be sued." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (internal quotation marks and citations omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Moreover, sovereign immunity extends to officers of the United States when they "act in their official capacities," *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005), because such actions against officers are "essentially a suit against the United States," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). It is the plaintiff's burden to demonstrate that sovereign immunity has been waived. *See Makarova*, 201 F.3d at 113.

Here, plaintiff has failed to demonstrate the requisite waiver of sovereign immunity by the United States. Consequently, as the MDC is a part of the BOP, a federal agency, plaintiff's claims against the MDC are dismissed. *See Meyer*, 510 U.S. at 475; *see also Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 100 (E.D.N.Y. 2005) (dismissing *Bivens* claims against the MDC on the basis of sovereign immunity); *Cohen v. Holder*, No. 11-CV-0003, 2011 U.S. Dist. LEXIS 20989, at *5-6 (E.D.N.Y. Mar. 1, 2011) (same). Further, plaintiff's claims against the Individual Defendants in their official capacities

are dismissed.  *See Williams*, 418 F. Supp. 2d at 100 (dismissing *Bivens* claims against federal officers "in their official capacities . . . on the grounds of sovereign immunity").[5]

**B.   Plaintiff's Claims Against the Individual Defendants In Their Individual Capacities**

   **1.   Exhaustion of Administrative Remedies Pursuant to the PLRA**

To the extent that plaintiff's *Bivens* claims are asserted against Officers Rice and Foreman in their individual capacities, the Individual Defendants contend that they are entitled to summary judgment pursuant to Rule 56 on the ground that plaintiff failed to exhaust all available administrative remedies prior to initiating the present federal action. (Defs.' Mem. at 9-11.)  For the reasons set forth below, the

---

[5] Liberally construed, the Complaint may also assert tort claims against the Individual Defendants in their individual capacities for negligence in serving plaintiff contaminated food and for failing to provide plaintiff with prompt and adequate medical care after he was injured. (*See generally* Compl.)  The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, provides that the exclusive remedy is against the United States, and not its employees, for "personal injury or death arising from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1); 28 U.S.C. § 1346(b); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994). Before filing suit in a federal court under the FTCA, a plaintiff must first "present[] the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ."  28 U.S.C. § 2675(a).  An administrative claim must be filed with the appropriate federal agency within two years after the claim accrues.  28 U.S.C. § 2401(b).  Defendants argue that plaintiff's claims under the FTCA should be dismissed because he did not exhaust his administrative remedies as required under the Act.  (Defs.' Mem. at 4-6.)  Plaintiff's claims arose in connection with the alleged contamination of his food with glass on July 6, 2009. Because plaintiff's two-year period to file an administrative claim began to run on July 6, 2009, and plaintiff has not filed an SF-95 form, the court lacks subject matter jurisdiction over plaintiff's negligence claims. *See Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) ("Unless a plaintiff complies with [the] requirement [to file an administrative claim], a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim.").

court declines to grant the Individual Defendants summary judgment on this basis.

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524 (2002) (noting that the exhaustion requirement under the PLRA applies to federal prisoners asserting *Bivens* claims). The PLRA's exhaustion requirement is mandatory and applies even if the plaintiff seeks relief, such as money damages, not available in the administrative process. *Porter*, 534 U.S. at 524; *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). Allegations concerning food and medical care are considered "prison conditions" under the PLRA and require exhaustion of available administrative remedies before a lawsuit can be filed in court. *Porter*, 534 U.S. at 532; *Neal v. Goord*, 267 F.3d 116, 119 (2d Cir. 2001).

Upon admission to a BOP facility, all inmates are given an Admission and Orientation ("A&O") booklet that advises them of the policies and procedures of both the BOP and of the individual institution. (Defs.' R. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 4.) The A&O booklet describes in detail the

administrative remedy process and advises inmates of the proper method to begin the administrative review process. (Defs.' R. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 4.) The BOP has established a three-tiered inmate grievance program for prisoners in its custody in which federal inmates may seek formal review of complaints relating to any aspect of their confinement. (Defs.' R. 56.1 Stmt. ¶ 2; McFarland Decl. ¶ 3 (citing 28 C.F.R. §§ 542.10-542.19).) The requirements are set forth in 28 C.F.R. §§ 542.10-542.19.

The administrative review process requires an inmate in BOP custody first to report the issue informally to prison staff so the staff can attempt to resolve the issue. (Defs.' R. 56.1 Stmt. ¶ 3; McFarland Decl. ¶ 4); *see also* 28 C.F.R § 542.13(a). If the inmate is dissatisfied with the staff's resolution, the inmate then can pursue the formal three-tiered administrative remedy process set forth in 28 C.F.R. §§ 542.10-542.16. (Defs.' R. 56.1 Stmt. ¶ 4; McFarland Decl. ¶ 5.) At the first level of formal administrative review, an inmate may file a Request for Administrative Remedy (i.e., a BP-9 or BP-229 form) with the prison warden at his individual institution. (Defs.' R. 56.1 Stmt. ¶ 5; McFarland Decl. ¶ 6); 28 C.F.R. § 542.14(a). This form must be submitted within 20 calendar days following the date on which the event forming the basis of the request occurred. (Defs.' R. 56.1 Stmt. ¶ 5; McFarland

Decl. ¶ 6); 28 C.F.R. § 542.14(a).  This 20-day period includes the time during which the inmate must make the informal report to prison staff and await a response from staff.  (Defs.' R. 56.1 Stmt. ¶ 5; McFarland Decl. ¶ 6); 28 C.F.R. § 542.14(a).  An inmate who is not satisfied with the warden's response may proceed to the second and third levels of administrative review by filing administrative appeals with the BOP Regional Director and subsequently with the BOP General Counsel.  (Defs.' R. 56.1 Stmt. ¶¶ 6-7 ; McFarland Decl. ¶¶ 7-8); 28 C.F.R. §§ 542.14-542.15.  All three levels of administrative review are governed by strict time limits.  (Defs.' R. 56.1 Stmt. ¶¶ 5-8; McFarland Decl. ¶¶ 6-9.)  The MDC accepts administrative remedy requests mailed from inmates who have left the BOP system and are incarcerated in other correctional facilities.  (Defs.' R. 56.1 Stmt. ¶ 10; McFarland Decl. ¶ 11.)

Here, defendants assert that they performed a search of BOP's computerized database, SENTRY, and "obtained copies of documents related to any requests for administrative remedies made by plaintiff while at MDC."  (McFarland Decl. ¶ 14, Ex. A; *see also* Defs.' R. 56.1 Stmt. ¶¶ 14-15.)  Based on that search, which produced no results, defendants conclude that "plaintiff has never filed an administrative remedy request."  (Defs.' Mem. at 11; *see also* Defs.' R. 56.1 Stmt. ¶ 16; McFarland Decl. ¶ 16.)

Plaintiff, however, states in his Complaint that he "ha[s] copies of all [his] unheard request[s] that were submitted." (Compl. app. A.) Further, at the May 19, 2010 status conference before Judge Bloom, plaintiff asserted that he "filed the BP-8 at M.D.C" but that he did not have a copy of it because "they moved [him] a week or two later with – you can't travel with any of your property or anything." (May 19 Tr. at 16.)

Although plaintiff's unsupported assertions that he submitted requests and that he filed a "BP-8," standing alone, cannot defeat defendants' motion for summary judgment, the court is nevertheless unable to conclude that plaintiff failed to exhaust administrative remedies under the PLRA. (*See* Compl. app. A; May 19 Tr. at 16.) As described above, an inmate must file a BP-9 form with the prison warden at his individual institution within 20 calendar days following the date on which the event forming the basis of the request occurred. 28 C.F.R. § 542.14(a). Here, plaintiff claims to have been served food containing glass fragments on July 6, 2009. (Compl. app. A.) On July 15, 2009, nine days after the alleged injury occurred, plaintiff was transferred to the QPDC. (McFarland Decl. ¶ 2.) At the time plaintiff was transferred, his time to file a BP-9 with the prison warden at MDC had not yet expired; he still had eleven days left in which to submit a formal administrative

request.  (*See* McFarland Decl. ¶ 6); 28 C.F.R. § 542.14(a).

Defendants' search of BOP records, however, was limited to

"requests for administrative remedies made by plaintiff *while at*

*MDC*." (McFarland Decl. ¶ 14 (emphasis added).)  The search did

not include requests plaintiff may have filed later, by mail or

otherwise, and therefore it failed to rule out the possibility

that plaintiff did file a BP-9 in the eleven days after he was

transferred.  Because defendants have not submitted any evidence

demonstrating that they searched for administrative remedies

filed by plaintiff after he left the MDC, there remains a

genuine issue of material fact as to whether plaintiff exhausted

his PLRA remedies.  Accordingly, the court declines to grant the

Individual Defendants summary judgment on the ground that

plaintiff failed to exhaust his PLRA remedies.

> **2.  Individual Defendants' Personal Involvement in**
> **Constitutional Violation**

The Individual Defendants next argue that plaintiff's

claims should be dismissed because plaintiff has not

sufficiently alleged the personal involvement of the Individual

Defendants in any violation of plaintiff's constitutional

rights.  (Defs.' Mem. at 12-13.)  For the reasons set forth

below, the court agrees.

To state a claim under *Bivens*, "a plaintiff must plead

that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948; *Adekoya v. Holder*, 751 F. Supp. 2d 688, 694 (S.D.N.Y. 2010) ("To state a claim under *Bivens*, a plaintiff must allege that an individual defendant personally committed a specific wrongful act that violated a well-established constitutional right of which a reasonable person would have known.").

As previously discussed, the court has construed plaintiff's Complaint as alleging, *inter alia,* constitutional violations by the Individual Defendants for (1) serving him food containing glass fragments; and (2) delaying the provision of medical care, resulting in severe pain and the loss of a tooth. Specifically, the allegations in the Complaint state that, after plaintiff suffered a broken tooth and lacerations to his mouth and gums, he reported these injuries "to the same duty officer whom [sic] served [him] the food (officer Forman [sic] and Officer Rice)." (Compl. app. A.) The Complaint further states that he was taken to a physician, "where the P.A. confirm[ed] the injury's [sic]" and "promised [plaintiff] an x-ray to assure no internal damage," but that he never received such an x-ray. (*Id.*)

These assertions fail to state a claim that the Individual Defendants were personally involved in a violation of plaintiff's constitutional rights. Plaintiff does not allege

that either of the Individual Defendants personally put glass in

his food or had any reason to know that his food was

contaminated when it was served.  (*See generally* Compl.)  Nor

does plaintiff suggest that either officer had any personal

involvement in plaintiff's medical care or his failure to obtain

an x-ray or other medical treatment.  Although a court may draw

reasonable inferences from the complaint, "where the well-

pleaded facts do not permit the court to infer more than the

mere possibility of misconduct," dismissal is appropriate.

*Starr*, 592 F.3d at 321 (quoting *Iqbal*, 129 S. Ct. at 1950)

(internal quotation marks omitted); *see also Adekoya*, 751 F.

Supp. 2d at 695-96 (dismissing action for failure to allege

personal involvement where complaint simply alleged that

defendants were aware of plaintiff's complaints and medical

conditions but failed to provide adequate care).  Accordingly,

the court finds that plaintiff has failed to allege sufficient

facts to support a claim that the Individual Defendants were

personally involved in a violation of plaintiff's constitutional

rights and plaintiff's *Bivens* claims against the Individual

Defendants are dismissed.[6]

---

[6] Under Rule 15(a), leave to amend shall be freely granted.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'").  Consequently, the court dismisses plaintiff's *Bivens* claims without prejudice, with leave to amend

## C. Cruel and Unusual Punishment

### 1. Inadequate Prison Conditions

Even assuming that the Complaint properly alleges personal involvement by any of the Individual Defendants, the court finds that plaintiff has not stated a cognizable claim for inadequate prison conditions. A claim alleging that prison conditions violate the Eighth Amendment must satisfy a two-prong test by demonstrating that (1) the conditions are "sufficiently serious" from an objective point of view (the "objective requirement"), and (2) the prison officials acted subjectively with "deliberate indifference" (the "subjective requirement"). *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). While the objective requirement "does not mandate comfortable prisons," *Phelps*, 308 F.3d at 185, prison conditions also may not "pose an unreasonable risk of serious damage to [prisoners'] future health," *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Second Circuit has stated that the Eighth Amendment requires that prisoners must receive "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who

his Complaint by no later than August 12, 2011. Should plaintiff choose to amend, he must plead facts sufficient to establish both (1) that he has timely exhausted his administrative remedies pursuant to the PLRA; and (2) that the Individual Defendants were personally involved in violating his constitutional rights. Further, he should attach to his amended complaint any documents showing that he has timely exhausted his PLRA administrative remedies.

consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quotation marks and citation omitted). Under the subjective requirement, deliberate indifference exists if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Phelps*, 308 F.3d at 185-86.

The court finds that the allegedly contaminated meal plaintiff was served could be characterized as a "sufficiently serious" prison condition to satisfy the objective prong. However, the Complaint fails to provide sufficient details to satisfy the subjective prong. Plaintiff has not alleged that either of the Individual Defendants had actual knowledge that plaintiff's food was contaminated at the time they served it. Instead, the Complaint simply states that Rice and Foreman were "the same duty officer[s] who[] served [plaintiff] the food." (Compl. app. A.) This, absent more, is insufficient to sustain plaintiff's claims against the Individual Defendants in their individual capacities. *See Black v. Fischer*, No. 9:08-CV-0232, 2010 U.S. Dist. LEXIS 74741, at *27 (N.D.N.Y. July 1, 2010) (granting defendants summary judgment where plaintiff did not allege that defendants had actual knowledge of the unhealthy food condition). Accordingly, plaintiff has failed adequately

to allege that defendants violated his constitutional rights by serving him contaminated food.

### 2. Inadequate Medical Care

Furthermore, the Complaint does not properly allege a *Bivens* claim for insufficient medical care. Like plaintiff's food-related claim, claims that prison officials have disregarded an inmate's medical needs must satisfy both objective and subjective elements. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (In order to establish "a claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" (quoting *Estelle*, 429 U.S. at 104)).

Under the objective prong, the plaintiff must show that his "medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citing *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). The subjective prong requires the charged official to have acted with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). "The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hemmings*, 134 F.3d at 108 (quoting *Hathaway*, 99 F.3d at 553). Thus, to state a *Bivens* claim for inadequate medical care, plaintiff must allege that the Individual Defendants knew of and disregarded an excessive risk to his health or safety.

Again, although plaintiff's injuries to his gums and mouth satisfy the objective prong and can be characterized as a "serious medical condition," the Complaint nevertheless fails under the subjective prong. The Complaint states in conclusory terms that plaintiff reported "the situation" to the Individual Defendants, that another officer, Lieutenant TaMayo, took plaintiff to see a doctor, and that plaintiff was promised an x-ray, which he never received. (Compl. app. A.) The Complaint does not state that plaintiff requested medical attention from either of the Individual Defendants or that they denied him medical care with deliberate indifference to his serious medical needs. Indeed, plaintiff does not allege that the Individual Defendants had any role whatsoever in his medical care. On this basis, the Complaint does not contain sufficient factual allegations to defeat a motion to dismiss. *See Warrender v. United States*, No. 09-CV-2697, 2011 U.S. Dist. LEXIS 15901, at *16 (E.D.N.Y. Feb. 17, 2011) (dismissing claims where "Plaintiff does not allege that he requested and was denied medication from

[defendants], nor that they conducted the intake medical examination with deliberate indifference to plaintiff's serious medical needs").[7]

## CONCLUSION

For the foregoing reasons: (1) plaintiff's *Bivens* claims against the MDC are dismissed with prejudice; (2) plaintiff's *Bivens* claims against the Individual Defendants in their official capacities are dismissed with prejudice; (3) plaintiff's negligence claims against the Individual Defendants in their individual capacities are dismissed with prejudice; and (4) plaintiff's *Bivens* claims against the Individual Defendants in their individual capacities are dismissed without prejudice. Plaintiff is granted leave to amend his Complaint by no later than August 12, 2011. The United States Attorney's Office shall serve a copy of this Memorandum & Order on plaintiff and file a Certificate of Service on the Electronic Case Filing System by no later than July 18, 2011.

**SO ORDERED.**

Dated: July 15, 2011
        Brooklyn, New York

_____  _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

---

[7] Having concluded that plaintiff has failed to state a *Bivens* claim against the Individual Defendants, the court need not consider whether the Individual Defendants are entitled to qualified immunity from this action.